IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

BANK OF AMERICA, N.A., §
§
    Plaintiff, §
§
v. § CIVIL ACTION NO. H-12-313
§
FULCRUM ENTERPRISES, LLC, §
§
    Defendant. §

## <u>MEMORANDUM, RECOMMENDATION, AND ORDER</u>

Pending before the court[1] are Defendant's Motion to Dismiss and No-Evidence Motion for Summary Judgment (Doc. 29), Plaintiff's Motion to Exclude Defendant's Expert (Doc. 30), and Plaintiff's Motion for Summary Judgment (Doc. 31). The court has considered the motions, the responses, all other relevant filings, and the applicable law. For the reasons set forth below, the court **GRANTS** Plaintiff's motion to exclude and **RECOMMENDS** that Plaintiff's motion for summary judgment be **GRANTED** and Defendant's motion be **DENIED**.

## I. Case Background

Bank of America, N.A., ("BANA") filed this action against Fulcrum Enterprises, LLC, ("Fulcrum") pursuant to the Texas Uniform Fraudulent Transfer Act ("TUFTA" or "Act").[2]

## A. <u>Factual Background</u>

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. Doc. 4.

[2] Tex. Bus. & Com. Code §§ 24.001-24.013.

On August 7, 2009, BANA commenced a separate suit ("Underlying Proceeding") against Nancy Groves ("Groves"), among others, alleging participation in a scheme to defraud mortgage lenders.[3] Groves was served with the Underlying Proceeding on February 22, 2010, and filed her answer on April 7, 2010.[4]

On May 13, 2010, BANA filed a motion seeking a preliminary injunction against Groves to prohibit her from selling, assigning, transferring, or encumbering any interest she had in any real property.[5] On July 6, 2010, a memorandum and recommendation was issued recommending that BANA's motion be granted.[6] The district court adopted the memorandum and recommendation on September 8, 2010.[7]

Between May 28, 2010, and July 20, 2010, Groves transferred eight properties ("Properties") to Fulcrum, a real estate company operated by Allan Groves.[8] Groves and Allan Groves were married

---

[3]   See Doc. 31-2, Ex. 1-A to BANA's Mot. for Summ. J., Underlying Proceeding Dkt. Sheet No. 1.

[4]   See id. Nos. 67, 99.

[5]   See id. No. 107; Doc. 31-7, Ex. 1-E to BANA's Mot. for Summ. J., Mot. for Prelim. Inj.

[6]   See Doc. 31-2, Ex. 1-A to BANA's Mot. for Summ. J., Underlying Proceeding Dkt. Sheet No. 120; Doc. 31-8, Ex. 1-F to BANA's Mot. for Summ. J., Mem. & Recommendation Dated July 6, 2010.

[7]   See Doc. 31-2, Ex. 1-A to BANA's Mot. for Summ. J., Underlying Proceeding Dkt. Sheet No. 134; Doc. 31-9, Ex. 1-G to BANA's Mot. for Summ. J., Order Dated September 8, 2010.

[8]   See Doc. 31-16, Exs. 2-9 to BANA's Mot. for Summ. J., Deeds.  The properties transferred, all located in Houston, Texas, and transferred by special warranty deed, include: (1) 12811 Wressell Circle (executed on May 28, 2010, and recorded on June 1, 2010); (2) 11812 Southlake Dr. (executed on May 27, 2010, and

from 1959 until 1990 and have maintained a friendly relationship since their divorce.[9]   Allan Groves had previously assisted Groves in her business affairs, including facilitating the purchase of properties from her by companies he owned.[10]   Groves dealt only with Allen Groves in transferring the Properties to Fulcrum.[11]

Pursuant to an oral agreement, Groves received nothing from Fulcrum in exchange for transferring the Properties, collectively valued at approximately $533,000 by the Harris County Appraisal District, to Fulcrum.[12]   For a five year period after the transfer,

recorded on June 1, 2010); (3) 7047 Bissonnet Street, Unit 110 (executed on May 28, 2010, and recorded on June 1, 2010); (4) 8525 Hearth Drive, Unit 3 (executed on May 28, 2010, and recorded on June 1, 2010); (5) 5911 Arncliffe (executed on May 28, 2010, and recorded on June 1, 2010); (6) 781 Country Place Drive, Unit 1081, (executed on June 11, 2010, and recorded on June 18, 2010); (7) 10912 Gulf Freeway, Unit 77 (executed on July 16, 2010, and recorded on July 20, 2010); (8) 10912 Gulf Freeway, Unit 15 (executed on July 16, 2010, and recorded on July 10, 2010). See Doc. 31-16, Exs. 2-9 to Pl.'s Mot. for Summ. J., Deeds; Doc. 6, Pl.'s Am. Compl. p. 7.

Fulcrum does not dispute BANA's contention that Fulcrum was organized and operated by Allan Groves. On November 1, 2013, BANA took the deposition of Lance Kerness ("Kerness"), the representative designated to testify by Fulcrum. See Doc. 31-17, Ex. 10 to BANA's Mot. for Summ. J., Dep. of Kerness. Kerness has been the manager of Fulcrum since its inception in August 2008. Id. pp. 4-6. Kerness was hired by Allan Groves, who then paid Kerness monthly to serve as manager. Id. p. 7. Kerness testified that he was aware of no other person having any affiliation with Fulcrum other than himself and Allan Groves. Id. p. 13. As manager, Kerness had no authority independent of that given to him by Allan Groves. Id. p. 11. Kerness testified that he did nothing to prepare for the deposition and was not aware of the allegations being made against Fulcrum by BANA. Id. pp. 19-20, 23.

[9]   See Doc. 31-18, Ex. 12 to BANA's Mot. for Summ. J., Dep. of Groves pp. 17-18; Ex. 31-18, Ex. 13 to BANA's Mot. for Summ. J., Trial Testimony of Groves pp. 186-87.

[10]   See Doc. 31-18, Ex. 13 to BANA's Mot. for Summ. J., Trial Testimony of Groves pp. 200-01, 204, 214-15, 217-18.

[11]   See Doc. 31-18, Ex. 12 to BANA's Mot. for Summ. J., Dep. of Groves p. 72.

[12]   See Doc. 31-19, Ex. 15 to BANA's Mot. for Summ. J., Harris Cnty. Appraisal Dist. Docs; Doc. 31-18, Ex. 12 to BANA's Mot. for Summ. J., Dep. of Groves pp. 72-75.

Groves would retain the right to receive rental income and concurrent responsibility to pay all bills and taxes related to the properties.[13]

On March 26, 2013, BANA and Groves entered into a Settlement Agreement whereby Groves agreed to pay BANA $345,000 to resolve the claims against her in the Underlying Litigation.[14]  Pursuant to the agreement, Groves and BANA executed an Agreed Judgment granting BANA judgment against Groves in the amount of $500,000 plus post-judgment interest to be presented to the court for immediate entry in the event BANA did not receive the settlement funds by September 1, 2013.[15]  The Settlement Agreement stipulated that the Agreed Judgment could not be appealed or otherwise challenged in any way.[16] The Agreed Judgment was entered on October 8, 2013, after Groves failed to make any payments to BANA.[17]  Groves then filed a motion to vacate the Agreed Judgment on November 5, 2013, on the basis that BANA lacked standing to file suit.[18]  The motion was denied on

---

[13]    See Doc. 31-18, Ex. 12 to BANA's Mot. for Summ. J., Dep. of Groves pp. 74-75.

[14]    See Doc. 35-2, Ex. 1-O to BANA's Resp. to Fulcrum's Mot. to Dismiss, Settlement Agreement.

[15]    See id. pp. 3-4.

[16]    See Doc. 35-2, Ex. 1-P to BANA's Resp. to Fulcrum's Mot. to Dismiss, Agreed Judgment.

[17]    See Doc. 31-2, Ex. 1-A to BANA's Mot. for Summ. J., Underlying Proceeding Dkt. Sheet No. 327; Doc. 31-1, Ex. 1 to BANA's Mot. for Summ. J., Decl. of Michael McKleroy p. 3.

[18]    See Doc. 31-2, Ex. 1-A to BANA's Mot. for Summ. J., Underlying Proceeding Dkt. Sheet No. 331.

4

November 20, 2013.[19]  Groves filed a notice of appeal on December 18, 2013.[20]

## B.  Procedural Background

BANA filed this suit on February 1, 2012, and an Amended Complaint on February 8, 2012, alleging that Groves's transferring the Properties to Fulcrum violated the TUFTA, specifically Tex. Bus. & Com. Code §§ ("Sections") 24.005(a)(1) and 24.006(a).[21]  BANA sought to void Groves's transfer of the Properties to Fulcrum or, in the alternative, to recover judgment against Fulcrum for the value of the property transferred to the extent necessary to satisfy BANA's claim against Groves.[22]  BANA also sought actual damages caused by the transfers, punitive damages, injunctive relief, and attorneys' fees and costs.[23]  Fulcrum filed a motion to dismiss and no-evidence motion for summary judgment on November 21, 2013.[24]  BANA filed a response on December 12, 2013, and Fulcrum filed a reply on December 28, 2013.[25]  BANA moved to exclude

---

[19]    See id. No. 334.

[20]    See BAC Home Loans Serv. v. Tex. Realty Holdings, No. H-09-2539 (S.D. Tex) Dkt. No. 336.

[21]    Doc. 1, BANA's Orig. Compl.; Doc. 6, BANA's 1st Am. Compl.

[22]    Id. p. 10.

[23]    Id.

[24]    Doc. 29, Fulcrum's Mot. to Dismiss.

[25]    Doc. 33, BANA's Resp. to Fulcrum's Mot. to Dismiss; Doc. 48, Fulcrum's Reply in Supp. of Mot. to Dismiss.

Fulcrum's expert and for summary judgment on November 21, 2013.[26]
Fulcrum filed responses on December 12, 2013, and BANA filed
replies on December 27, 2013.[27]

## II. Fulcrum's Motion

Fulcrum moves to dismiss on the basis that BANA is not a
creditor of Groves and therefore lacked standing to file suit
pursuant to Sections 24.005(a)(1) and 24.006(a). Alternatively,
Fulcrum contends that BANA's claims against it are not ripe.
Lastly, Fulcrum argues that it is entitled to summary judgment on
the basis that BANA has introduced no evidence that it is a
creditor of Groves.

"A fraudulent transfer is a transfer by a debtor with the
intent to hinder, delay, or defraud his creditors by placing the
debtor's property beyond the creditor's reach." Nobles v. Marcus,
533 S.W.2d 923, 925 (Tex. 1976). The TUFTA established a cause of
action whereby creditors may set aside fraudulent transfers by
debtors. Jackson Law Office, P.C. v. Champpell, 37 S.W.3d 15, 25
(Tex. App.-Tyler 2000, pet. denied). Under the TUFTA, fraudulent
transfers are divided into two types: actual fraudulent transfers,
covered in Section 24.005(a)(1), and constructive fraudulent
transfers, covered in Sections 24.005(a)(2) and 24.006. In re

---

[26]    Doc. 30, BANA's Mot. to Exclude; Doc. 31, BANA's Mot. for Summ. J.

[27]    Doc. 39, Fulcrum's Resp. to BANA's Mot. for Summ. J.; Doc. 40, Fulcrum's Resp. to BANA's Mot. to Exclude; Doc. 45, BANA's Reply in Supp. of Mot. for Summ. J.; Doc. 46, BANA's Reply in Supp. of Mot. to Exclude.

Pace, 456 B.R. 253, 266 (Bankr. W.D. Tex. 2011).

Pursuant to Section 24.005(a)(1), "[a] transfer made . . . by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made . . . , if the debtor made the transfer . . . with actual intent to hinder, delay, or defraud any creditor of the debtor." Tex. Bus. & Com. Code § 24.005(a)(1).

Section 24.006(a) provides that a fraudulent transfer also occurs when a creditor's claim arises "before the transfer was made . . . if the debtor made the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer." Tex. Bus. & Com. Code § 24.006(a).

Following a fraudulent transfer, a creditor may set aside the transfers or recover judgment for the value of the asset transferred to the extent necessary to satisfy the creditor's claim. Tex. Bus. & Com. Code §§ 24.008(a)(1), 24.009(b). A creditor is entitled to judgment against the first transferee of the asset so long as the transferee did not "[take] in good faith and for a reasonably equivalent value." Tex. Bus. & Com. Code § 24.009(a)-(b).

## A.    **Standing**

Fulcrum moves to dismiss for lack of subject matter

7

jurisdiction pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) on the basis that BANA is not a creditor of Groves and therefore lacked standing to sue under the statute.

Standing is a threshold consideration which defines the limits of a federal court's power to hear and adjudicate cases. <u>See</u> <u>Warth v. Seldin</u>, 422 U.S. 490, 498 (1975); <u>McClure v. Ashcroft</u>, 335 F.3d 404, 408 (5th Cir. 2003). The doctrine has two components, one involving constitutional limitations on federal court jurisdiction and the other involving prudential limitations on its exercise. <u>McClure</u>, 335 F.3d at 408 (citing <u>Raines v. Byrd</u>, 521 U.S. 811, 820 (1997)); <u>see also</u> <u>Warth</u>, 422 U.S. at 517-18.

In order to have constitutional standing to bring suit, the plaintiff must have sustained an injury in fact "fairly traceable to the defendant's actions" and "likely to be redressed by a favorable decision" in court. <u>Ensley v. Cody Res., Inc.</u>, 171 F.3d 315, 319 (5th Cir. 1999); <u>see also</u> <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992). The prudential limitations include the general requirement that a plaintiff seek relief based on his own legal rights and interests and not those of third parties. <u>Warth</u>, 422 U.S. at 499; <u>Ensley</u>, 171 F.3d at 319. This component requires that the court review the law on which a claim is based to determine whether it grants parties such as the plaintiff a right to relief. <u>Warth</u>, 422 U.S. at 500.

The Fifth Circuit has instructed that, while a dismissal for

8

lack of constitutional standing should be granted under Rule
12(b)(1), dismissal for lack of prudential standing is properly
granted under Rule 12(b)(6), which provides for dismissal for
failure to state a claim upon which relief can be granted.  See
Blanchard 1986, Ltd. v. Park Plantation, LLC, 553 F.3d 405, 409 (5th
Cir. 2008); Harold H. Huggins Realty, Inc. v. FNC, Inc., 634 F.3d
787, 795 n.2 (5th Cir. 2011).  Because Fulcrum disputes BANA's right
to relief under Sections 24.005 and 24.006, its motion to dismiss
on this basis is properly brought under Rule 12(b)(6), not Rule
12(b)(1), and the court considers it as such.

Pursuant to Rule 12(b)(6), dismissal of an action is
appropriate whenever the pleading, on its face, fails to state a
claim upon which relief can be granted.  When considering a motion
to dismiss, the court should construe the allegations in the
complaint favorably to the pleader and accept as true all well-
pleaded facts.  Harold H. Huggins Realty, Inc., 634 F.3d at 803
n.44.

A complaint need not contain "detailed factual allegations"
but must include sufficient facts to indicate the plausibility of
the claims asserted, raising the "right to relief above the
speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555
(2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).
Plausibility means that the factual content "allows the court to
draw the reasonable inference that the defendant is liable for the

misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678.  A plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." <u>Twombly</u>, 550 U.S. at 555.  In other words, the factual allegations must allow for an inference of "more than a sheer possibility that a defendant has acted unlawfully." <u>Iqbal</u>, 556 U.S. at 678.

Fulcrum contends that, although BANA has obtained a judgment against Groves in the Underlying Proceeding, it cannot qualify as a creditor because the court in the Underlying Proceeding lacked subject matter jurisdiction over the case.

The statute defines "Creditor" as "a person . . . who has a claim." Tex. Bus. & Com. Code § 24.002. "Claim," in turn, is defined as "a right to payment or property, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." <u>Id.</u>  Thus, "[u]nder Texas law, one may bring an action under the [TUFTA] as a creditor of the transferor merely by virtue of a legal action, pending and unliquidated at the time of transfer, against the transferor." <u>Colonial Leasing Co. of New England, Inc., v. Logistics Control Group Int'l</u>, 762 F.2d 454, 458 (5th Cir. 1985) (citing <u>Hollins v. Rapid Transit Lines, Inc.</u>, 440 S.W.2d 57, 60 (Tex. 1969).

In its Amended Complaint, BANA alleged that it had commenced the Underlying Proceeding against Groves.  Thus, BANA sufficiently

alleged that it was a creditor of Groves to survive a motion to dismiss for failure to state a claim.   Accordingly, Fulcrum's motion to dismiss must be denied.

**B.   Ripeness**

Fulcrum contends that, should BANA be found to have stated a claim under the TUFTA, its claim must nonetheless be dismissed on ripeness grounds because Groves's appeal of the court's denial of her motion to dismiss the Agreed Judgment remains pending.

"A court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical." New Orleans Pub. Serv., Inc. v. Council of New Orleans, 833 F.2d 583, 586 (5th Cir. 1987).  "The key considerations are 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'"  Id. (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 149 (1967).  "A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required."  Id.

Fulcrum argues that the judgment against Groves in the Underlying Proceeding is not final because it remains subject to appeal and therefore BANA's present case is not ripe.  However, despite Fulcrum's assertions, Groves has not appealed the Agreed Judgment entered in the Underlying Proceeding.  Indeed, the Agreed Judgment provides that it "cannot be appealed or challenged in any way and shall be immediately entitled to all writs, executions and

orders for the enforcement and collection of [the] judgment."[28]   The
pending appeal of the court's denial of Groves's motion to dismiss
the Agreed Judgment does not render this case unripe for
adjudication.[29]   Accordingly, Fulcum's motion to dismiss for lack
of ripeness must be denied.

**C.**   **Summary Judgment**

Fulcrum also moves for a "no-evidence" summary judgment on
BANA's claim.  A no-evidence motion for summary judgment, however,
is a pleading that may be filed in state court, but not federal
court.  See Casteneda v. Flores, No. 5:05-CV-129, 2007 WL 1671742,
at *2 (S.D. Tex. June 8, 2007) (unpublished).  Under federal law,
the party moving for summary judgment must inform the court of the
basis for the summary judgment motion and must point to relevant
excerpts from pleadings, depositions, answers to interrogatories,
admissions, or affidavits that demonstrate the absence of genuine
factual issues.  Celotex Corp., 477 U.S. at 323; Topalian v.
Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992).

In its motion, Fulcrum avers, without citation to the record,
that BANA has introduced no evidence that it is a creditor of
Groves.  "While federal law clearly contemplates summary judgment
in circumstances where there is truly no evidence of an essential

---

[28]    See Doc. 35-2, Ex. 1-P to BANA's Resp. to Fulcrum's Mot. to Dismiss,
Agreed Judgment.

[29]    See Doc. 31-2, Ex. 1-A to BANA's Mot. for Summ. J., Underlying
Proceeding Dkt. Sheet No. 331; BAC Home Loans Serv. v. Tex. Realty Holdings, No.
H-09-2539, Dkt. No. 336.

element . . . [,] the party moving for summary judgment must make some showing that evidence on an essential point is wholly lacking." In re Hydro-Action, Inc., 341 B.R. 186, 193 (Bankr. E.D. Tex. 2006.  Fulcrum has failed to make this showing.  Moreover, having introducing evidence of the Agreed Judgment, BANA plainly is able to withstand summary judgment on the issue of its status as a creditor.  See Colonial Leasing, 762 F.2d 454, 458 (5th Cir. 1985) ("[T]o withstand summary judgment on this issue a claimant need only show that it has asserted against the transferor a cause of action that accrued prior to the transfer.  To be entitled to relief under the Act, however, the claimant must introduce evidence that judgment was rendered in its favor.").  Accordingly, Fulcrum cannot prevail in its motion for summary judgment.

### III. BANA's Motion for Summary Judgment

BANA moves for summary judgment on its claim that Groves's transfer of the Properties to Fulcrum was in violation of Sections 24.005(a)(1) and 24.006(a).

### A.   Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir. 2003).  A material fact is a fact that is identified by applicable

substantive law as critical to the outcome of the suit.  <u>Anderson</u>
<u>v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Ameristar Jet</u>
<u>Charter, Inc. v. Signal Composites, Inc.</u>, 271 F.3d 624, 626 (5th
Cir. 2001).  To be genuine, the dispute regarding a material fact
must be supported by evidence such that a reasonable jury could
resolve the issue in favor of either party.  <u>Anderson</u>, 477 U.S. at
250; <u>TIG Ins. Co. v. Sedgwick James of Wash.</u>, 276 F.3d 754, 759 (5th
Cir. 2002).

The movant must inform the court of the basis for the summary
judgment motion and must point to relevant excerpts from pleadings,
depositions, answers to interrogatories, admissions, or affidavits
that demonstrate the absence of genuine factual issues.  <u>Celotex</u>
<u>Corp.</u>, 477 U.S. at 323; <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1131 (5th
Cir. 1992).  If the moving party can show an absence of record
evidence in support of one or more elements of the case for which
the nonmoving party bears the burden, the movant will be entitled
to summary judgment.  <u>Celotex Corp.</u>, 477 U.S. at 322.  In response
to a showing of lack of evidence, the party opposing summary
judgment must go beyond the pleadings and proffer evidence that
establishes each of the challenged elements of the case,
demonstrating that genuine issues of material fact do exist that
must be resolved at trial.  <u>Id.</u> at 324.

When considering the evidence, "[d]oubts are to be resolved in
favor of the nonmoving party, and any reasonable inferences are to

be drawn in favor of that party." <u>Evans v. City of Houston</u>, 246 F.3d 344, 348 (5th Cir. 2001); <u>see also</u> <u>Boston Old Colony Ins. Co. v. Tiner Assocs. Inc.</u>, 288 F.3d 222, 227 (5th Cir. 2002). The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." <u>Honore v. Douglas</u>, 833 F.2d 565, 567 (5th Cir. 1987).

However, the nonmoving party must show more than "some metaphysical doubt as to the material facts." <u>Meinecke v. H & R Block of Houston</u>, 66 F.3d 77, 81 (5th Cir. 1995). Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden. <u>Brown</u>, 337 F.3d at 541; <u>Ramsey v. Henderson</u>, 286 F.3d 264, 269 (5th Cir. 2002). The court must grant summary judgment if, after an adequate period of discovery, the nonmovant fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp.</u>, 477 U.S. at 322.

**B.    <u>Section 24.005(a)(1) Claim</u>**

As stated above, Section 24.005(a)(1) provides that "[a] transfer made . . . by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made . . . , if the debtor made the transfer . . . with actual intent to hinder, delay, or defraud any

creditor of the debtor." Tex. Bus. & Com. Code § 24.005(a)(1). Fulcrum does not contest that it received the properties from Groves or that BANA's claim arose before the transfer was made. Thus, to prevail in its motion for summary judgment, BANA must establish as a matter of law that it was a creditor of Groves and that the transfer was made with the requisite "intent to hinder, delay, or defraud."

       **1.**   **BANA's Status as a Creditor**

     As discussed above, the statute defines "Creditor" as "a person . . . who has a claim" and "Claim" as "a right to payment or property, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." Tex. Bus. & Com. Code § 24.002. A claimant asserting an action under the TUFTA as a creditor by virtue of a legal action must introduce evidence that judgment was rendered in its favor to be entitled to relief under the Act. Colonial Leasing, 762 F.2d at 458.

     Here, Fulcrum concedes that an Agreed Judgment ordering Groves to pay BANA $500,000 plus post-judgment interest was entered in the Underlying Proceeding. The Agreed Judgment further provided that it "cannot be appealed or challenged in any way and shall be immediately entitled to all writs, executions and orders for the

enforcement and collection of this Judgment."[30]  Fulcrum maintains that the judgment is invalid because BANA lacked standing to sue in the Underlying Proceeding, but does not offer an explanation for how it may challenge the validity of the judgment consented to by Groves.   Therefore, the court finds that Fulcrum's assertion regarding BANA's standing in the Underlying Proceeding is insufficient to raise an issue of fact as to BANA's status as a creditor.[31]

### 2.  **Groves's Intent**

Section 24.005(b) lists eleven non-exclusive badges of fraud that may be used to prove the fraudulent intent of the transferor. See In re Hinsley, 201 F.3d 638, 643 (5th Cir. 2000).  BANA contends that several of these badges were present, including: (1) the transfers were made to an insider; (2) Groves retained control of the properties after the transfers; (3) Groves had been sued when the transfers occurred; (4) the transfers were of all or substantially all of Groves's assets; and (5) the value of the consideration received by Groves was not reasonably equivalent to the value of the properties.

---

[30]   See Doc. 35-2, Ex. 1-P to BANA's Resp. to Fulcrum's Mot. to Dismiss, Agreed Judgment.

[31]   BANA moves to exclude an expert designated by Fulcrum to opine on whether BANA had standing to sue in the Underlying Proceeding.  See Doc. 30, BANA's Mot. to Exclude.  Because Fulcrum has failed to raise a fact issue as to BANA's status as a creditor, such testimony would be irrelevant.  See Fed. R. Evid. 702 ("A witness who is qualified as an expert . . . may testify . . . if . . . the expert's . . . specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.").  Accordingly, the court finds that Fulcrum's expert must be excluded.

"Intent to defraud can be decided as a matter of law where numerous badges of fraud are present and the only evidence in support of the defendant's theory is a series of conclusional, self-serving statements."  <u>In re Phillips & Hornsby Litig.</u>, 204 Fed. Appx. 398, 401 (5th Cir. 2006) (alterations and internal quotation marks omitted) (quoting <u>BMG Music v. Martinez</u>, 74 F.3d 87, 90-91 (5th Cir. 1996)).  Fulcrum does not dispute that Groves retained control of the properties after the transfer or that Groves had been sued when the transfers occurred.

### i.   <u>Transfer to an Insider</u>

TUFTA defines an insider to include a relative or general partner of the debtor, a partnership in which the debtor is a general partner, a general partner in such a partnership, and a corporation of which the debtor is a director, officer, or person in control.  Tex. Bus. & Com. Code Ann. § 24.002(7).  This list is not exclusive, but is intended to be for purposes of illustration.  <u>See</u> <u>In re Holloway</u>, 955 F.2d 1008, 1010 (5th Cir. 1992).  Generally, an insider is "an entity whose close relationship with the debtor subjects any transactions made between the debtor and the insider to heavy scrutiny.  <u>See</u> <u>Tel. Equip. Network, Inc. v. TA/Westchase Place, Ltd.</u>, 80 S.W.3d 601, 609 (Tex. App.-Houston [1st Dist.] 2002, no pet.).  The principal factors in determining insider status are (1) the closeness of the relationship between the transferee and debtor, and (2) whether the transactions were at arm's length.

18

Id.; see also In re Holloway, 955 F.2d at 1010.

The undisputed facts demonstrate the closeness of the relationship between Groves and Fulcrum.  Fulcrum was operated by Allen Groves, and Groves dealt only with Allan Groves in effecting the transfers.[32]  Groves and Allen Groves were married to each other for over thirty years, they maintained a friendly relationship after their divorce, and Allen Groves frequently assisted Groves in her business affairs.[33]  See Holloway, 955 F.2d at 1012 (finding close relationship to exist based in part on parties having been married for twenty years and having maintained frequent contacts after their divorce); In re Wren Alexander Investments, LLC, No. 08-52914-RBK, 2011 WL 748131, at * 10 (W.D. Tex. 2011) (focusing on relationship between principals of two companies in finding close relationship between the companies).

Moreover, the transactions at issue were plainly not at arm's length.  Groves and Allan Groves operated only under oral agreements, and the Properties were transferred without Groves receiving anything in return.[34]  Thus, the summary judgment record shows that, as a matter of undisputed fact, the transfer of the

---

[32]   See Doc. 31-17, Ex. 10 to BANA's Mot. for Summ. J., Dep. of Kerness pp. 4-7, 11, 13; Doc. 31-18, Ex. 12 to BANA's Mot. for Summ. J., Dep. of Groves p. 72.

[33]   See Doc. 31-18, Ex. 12 to BANA's Mot. for Summ. J., Dep. of Groves pp. 17-18; Ex. 31-18, Ex. 13 to BANA's Mot. for Summ. J., Trial Testimony of Groves pp. 186-87, 200-01, 204, 214-15, 217-18.

[34]   See Doc. 31-18, Ex. 12 to BANA's Mot. for Summ. J., Dep. of Groves pp. 72-75.

19

Properties was to an insider.

### ii.  Transfer of All or Substantially All Assets

In support of its contention that the properties Groves transferred to Fulcrum represented all or substantially all of her assets, BANA points to testimony by Groves that she transferred "[her] properties that [she] had left, other than [her] homestead" to Fulcrum in 2010.[35]  The TUFTA defines "asset" as "property of a debtor," not including property which is exempt under nonbankruptcy law, such as a homestead.  Tex. Bus. & Com. Code § 24.002(2); Tex. Prop. Code § 41.001(a).

Although Fulcrum argues that this badge of fraud has not been established, it does not dispute that, at the time the Properties were transferred, they represented all or substantially all of Groves's assets.  Rather, Fulcrum points to Groves's vague statement in her recent declaration that, as of December 12, 2013, she owned eight properties located in Georgia and North Carolina.[36]  Given the absence of any evidence directly controverting Groves's prior testimony that she transferred every property she owned other than her homestead to Fulcrum in 2010, the court finds that Groves's declaration does not raise a fact issue to the contrary.

### iii. Reasonably Equivalent Value

Under the TUFTA, "reasonably equivalent value" is defined as

---

[35]    See Doc. 31-18, Ex. 12 to BANA's Mot. for Summ. J., Dep. of Groves pp. 72.

[36]    See Doc. 39-3, Ex. 3 to Fulcrum's Resp. to BANA's Mot. for Summ. J.

including, "without limitation, a transfer or obligation that is within the range of values for which the transferor would have sold the assets in an arm's length transaction." Tex. Bus. & Com. Code Ann. § 24.004(d). While the issue is "largely a question of fact, this does not preclude a court from deciding that issue on summary judgment where no genuine issue of material fact exists." <u>Villaje Del Rio, Ltd. v. Colina Del Rio, LP</u>, Bo. SA-07-CA-947-XR, 2009 WL 2498238, at *4 (W.D. Tex. Aug. 12, 2009) (citations and internal quotation marks omitted).

Groves testified that she did not receive anything in exchange for transferring the Properties, collectively valued at approximately $533,000 by the Harris County Appraisal District, to Fulcrum.[37]  In its response to BANA's motion for summary judgment, Fulcrum asserts that Groves received the right to receive rents from the properties for five years as part of the transaction. Groves's testimony makes clear, however, that she had this right before the properties were transferred.  In her words, "it would just keep going the way that it was, except that I would no longer own the properties."[38]  The uncontroverted summary judgment evidence thus indicates that Groves did not receive reasonably equivalent value in exchange for the transfers made to Fulcrum.

---

[37]     <u>See</u> Doc. 31-19, Ex. 15 to BANA's Mot. for Summ. J., Harris Cnty. Appraisal Dist. Docs; Doc. 31-18, Ex. 12 to BANA's Mot. for Summ. J., Dep. of Groves pp. 72-75.

[38]     Doc. 31-18, Ex. 12 to BANA's Mot. for Summ. J., Dep. of Groves p. 74.

BANA has established the existence of five badges of fraud, making out a strong case that Groves had an intent to defraud BANA. The record contains no evidence to overcome this overwhelming inference of fraud. The court finds that a reasonable jury could only find that the transfers by Groves were made with the intent to "hinder, delay, or defraud" BANA. See BMG Music, 74 F.3d at 91 (affirming grant of summary judgment on Section 24.005(a)(1) claim where numerous badges of fraud were established and defendants offered only "a conclusory, self-serving statement" in support of their theory that transfers were not made with intent to defraud). Accordingly, the court recommends that BANA's motion for summary judgment be granted.

Because the court finds that the transfers may be set aside pursuant to Section 24.005(a)(1), the court need not consider BANA's claim under Section 24.006(a).

### IV. Conclusion

Based on the foregoing, the court **GRANTS** BANA's motion to exclude and **RECOMMENDS** that BANA's motion for summary judgment be **GRANTED** and Fulcrum's motion be **DENIED**.

Should the court's recommendations be adopted, BANA must submit a proposed judgment. The Clerk shall send copies of this Memorandum, Recommendation, and Order to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Rule 72(b) and General Order 2002-

13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.  Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 21ˢᵗ  day of April, 2014.

Nancy K. Johnson
United States Magistrate Judge